Filed 11/3/25  P. v. Heinsohn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C101769 |
| Plaintiff and Respondent, | (Super. Ct. No. 62192776) |
| v. | |
| BRADLEY HEINSOHN, | |
| Defendant and Appellant. | |

Defendant Bradley Heinsohn exchanged sexually explicit electronic communications with someone he believed was 13 years old.  After a jury found him guilty of attempted lewd act on a minor (Pen. Code, §§ 664, 288, subd. (a))[1] and communication with a minor with intent to commit a lewd act (§ 288.3, subd. (a)), the trial court sentenced him to 18 months in prison.  On appeal, Heinsohn argues misconduct by the prosecutor during rebuttal argument to the jury violated his constitutional rights.  We reject the claim and affirm.

---

[1]  Undesignated statutory references are to the Penal Code.

1

The underlying facts of Heinsohn's crimes are largely immaterial to our resolution of this appeal. It suffices to say that after Heinsohn sent sexually explicit communications to a decoy profile on a dating website that the Roseville Police Department created as part of a sting operation designed to catch sex offenders, he drove to meet the 13-year-old female he believed he had been communicating with. When police stopped and searched Heinsohn's car as he was driving to that meeting, they found a backpack that contained three containers of Vaseline, a bottle of hard liquor, and a bedsheet. Heinsohn was charged with attempted lewd act on a minor (§§ 664, 288, subd. (a); count one), communication with a minor with intent to commit a lewd act (§ 288.3, subd. (a); count two), and meeting with a minor for the purpose of engaging in a lewd act (§ 288.4, subd. (b); count three).

I

*Argument to the Jury and Admonishment of the Prosecutor*

In closing argument to the jury, defense counsel emphasized that under the dating website's terms, the decoy profile that Heinsohn contacted was supposed to belong to an adult. Counsel also emphasized to the jury that there was no evidence Heinsohn (1) had ever before used his account on the dating website "for any illicit purpose" or (2) had "any of that in his background or anything like that, and if there was evidence of some kind of inclination or pattern or tendency, that would have been shown to you. It wasn't and that's important for you to keep in mind."

In rebuttal, the prosecutor reminded the jury that the police officer behind the decoy profile repeatedly told Heinsohn that he was a 13-year-old female. Regarding Heinsohn's affirmative defense of entrapment, the prosecutor informally described the concept as "you're guilty, but you're free to go." He asked the jury to focus on the question whether the police officer behind the decoy profile "engaged in conduct that would cause a normally law-abiding person to commit the crime." He insisted the officer

did not, arguing, "entrapment is you're guilty, you've committed the crime, but the police conduct is so egregious . . . we're going to . . . excus[e] you from any consequence."

Moving to the issue of Heinsohn's possible punishment, the prosecutor told the jury: "[D]o not consider punishment. You must not do it. . . . Please trust that [the Judge] will do the right thing . . . for this case. Do you know anything about Mr. Heinsohn's history, his life, his upbringing, whether he's ever been in trouble before or not? Do you know any of that?" Defense counsel objected, and the trial court told counsel to approach the bench.

During a sidebar discussion, defense counsel argued the prosecutor was inviting the jury to speculate about Heinsohn's background, history, and character. The prosecutor insisted he was telling the jury *not* to do that. Defense counsel replied, "It sounds like he's asking them to consider punishment because punishment is going to be light." Addressing the prosecutor, the trial court said: "I was somewhat concerned about your comment . . . that . . . if they find entrapment, then there's no consequence. That was getting close to considering punishment; right? Right after that, you did say you can't consider punishment. I appreciate that, but be careful and don't go there." The prosecutor replied, "Yes, Your Honor." The trial court then addressed defense counsel: "I was concerned about, when you start[ed] going into his, well, there's no evidence that he has a record, that's going to cause the People to say, well, we don't know. Now we're getting the jury caught into speculating about whether he does or does not have a record." The trial court then addressed the prosecutor: "So I understand why you would bring that up, because of what [defense counsel] said, but I'm going to direct you not to talk about that anymore." The prosecutor responded, "Understood."

Later during rebuttal, the prosecutor told the jury: "Whatever the consequences are for Mr. Heinsohn, if you find him guilty, that's for [the Judge] to decide . . . . There are questions you want the answer to that you don't have." The trial court interrupted

and directed counsel to approach the bench, stating: "Maybe I wasn't clear. Do not talk about consequences, period." The prosecutor responded, "Yes, Your Honor."

Later still, the prosecutor told the jury: "I'm not asking you to condemn Mr. Heinsohn. Okay? He's a pretty young man. He's in his early 30's. He's got a lot of life ahead of him. He's got the opportunity to do some real soul-searching. Think about what it is in his life, his experiences, his choices, his values that led him to be in this position." Defense counsel objected "for the same reasons discussed at sidebar." Addressing the prosecutor in open court, the trial court said: "Counsel, this is getting close to talking about consequences and punishment, and you are directed not to do that." The prosecutor replied, "Yes, Your Honor." Resuming rebuttal, the prosecutor told the jury: "Mr. Heinsohn can fix those things. He has time to do that, but accountability comes first. You don't get to redemption. You don't get to --." The trial court again interrupted, directed counsel to approach the bench, and told the prosecutor: "[Y]ou're talking about redemption, consequences. You're talking about accountability. That's all related to punishment. You are directed to stop that." The prosecutor responded, "I didn't think that asking the jury to hold the defendant accountable was talking about consequences," to which the court replied, "Everything else that's been said, it does, so just stay away from that." The prosecutor then concluded his rebuttal.

II

*Final Instructions to the Jury and Commencement of Deliberations*

After the prosecutor's rebuttal, the trial court provided its final instructions to the jury. Among other things, the trial court told the jury, "You must reach your verdict without any consideration of punishment." The jury left the courtroom to begin deliberating at 3:37 p.m. on May 7, 2024.

4

## III

### *Mistrial Motion*

After the jury left the courtroom, defense counsel orally moved for a mistrial "due to repeated improper argument. [The prosecutor] knowingly conveyed to the jury the concrete impression that this was just going to result in a slap on the wrist. He continually said that Mr. Heinsohn will have ample opportunity to turn his life around, to evaluate his choices, to move forward in the context of discussing punishment." Counsel continued: "So for that reason, the intentional conduct, in violation of the Court's order, has impermissibly introduced the idea of punishment to this jury . . . that's misconduct, it's deliberate, and I'm moving for a mistrial with prejudice."

The prosecutor responded that he "did not mean to . . . nor [did] [he] believe [his] comments did ask the jury to consider punishment." "To the contrary," the prosecutor insisted, "I told them that they must not consider punishment." He continued: "My only other comments about punishment were the fact that Mr. Heinsohn is young, he has a long life ahead of him, and if you find him guilty, he can seek redemption." "That has nothing to do with what sentence the Court is going to give." "I understand the Court's instruction to me and respectfully I disagree." "[C]omment on the defendant's searching his soul" is not "a comment on punishment at all."

Defense counsel replied: "I think it's clear, when you talk about the opportunity for redemption, he wouldn't be making that argument if it were a 25-to-life case." "[T]hat element of potential length of punishment ha[s] been introduced because the implication is there will be time for him to achieve some sort of redemption." The prosecutor disagreed, insisting that he "repeatedly made this same argument in first-degree murder trials" and maintained: "It is a comment about" a defendant's "age and how much of his life he has left."

The trial court stated it wanted to review a transcript of the prosecutor's rebuttal before ruling on the mistrial motion and then asked the parties if there was "anything

5

else." Both parties said no. The court responded, "We'll let you know what the jury does." Court adjourned at 3:50 p.m., and the jury stopped deliberating at 3:57 p.m. on May 7, 2024.

At 8:52 a.m. on May 8, 2024, the trial court and the parties reconvened for further argument and discussion of the mistrial motion. The jury had already resumed deliberations at 8:09 a.m. that morning. Defense counsel supplemented his argument, asserting there was a reasonable likelihood the jury would misapply the prosecutor's comments regarding redemption and punishment by causing jurors "to potentially consider that this is going to result in a lenient sentence when in fact we know that the opposite is true." The prosecutor confirmed the court had received the written opposition filed that morning and declined to offer any further argument.

IV

*Ruling on the Mistrial Motion and Curative Instructions to the Jury*

The trial court ultimately denied the mistrial motion and stated it intended to remind the jury that argument of counsel is not evidence. But before announcing that ruling, the court explained "some things that [it] [thought] were concerning." First, the court read aloud the prosecutor's comments in rebuttal regarding entrapment and then observed: "[T]hat is somewhat concerning because the implication is that there are no consequences; right? Entrapment, you're guilty, but you're free to go. . . . [B]y referencing the fact that . . . he's guilty but free to go, that's an incorrect summary of the law. He's not guilty. There's no finding of guilt." The court next highlighted another instance in rebuttal when the prosecutor made "improper . . . refer[ence] again to consequence[s]" while "misstat[ing] . . . the law" regarding entrapment.

The trial court explained its concerns with other comments the prosecutor made in rebuttal regarding "consequences" and stated that "the real issue for the Court is whether the jury ha[d] been irreparably prejudiced" by the prosecutor's comments. Determining the answer to that question was "no," the court explained: "I believe I can" "repair the

6

possible prejudice to the jury." "It's my intention to bring the jury back out and to again remind them that nothing that the attorneys say is evidence, that when the attorneys argue and comment, their comments and argument are not evidence. The jury is not to speculate regarding evidence that has not been presented . . . and that they are not to consider . . . consequence or punishment. And then I'm going to send them back to deliberate." The court concluded: "I would deny the motion for mistrial with that curative advisement to the jury."

Defense counsel responded: "I think the Court has sua sponte identified an issue related to the way that [the prosecutor] argued that someone is guilty, and then if they're entrapped, they get away with being guilty . . . . I reflected on that afterwards. I did not object at the time. That was a mistake in my part, but I would ask that the Court instruct the jury that someone who is entrapped is not guilty. . . . That's my only additional request." The trial court replied: "I believe that the outline of the instructions that I made will be sufficient, so those are the words I will give to the jury. Okay?" Defense counsel responded, "Thank you."

Among the additional instructions that the trial court gave when the jury returned at 9:17 a.m., it told them: "not to consider in any way, shape, or form punishment or consequences. That is not a consideration for you at all, and it was not presented in evidence."

V

*Verdict and Sentencing*

After the jury found Heinsohn guilty of attempted lewd act on a minor (count one) and communication with a minor with intent to commit a lewd act (count two), but not guilty of meeting with a minor for the purpose of engaging in a lewd act (count three), the trial court sentenced him to 18 months in prison and ordered him to register as a sex offender for the rest of his life, pursuant to section 290. Heinsohn filed a notice of appeal

7

in August 2024.  His opening brief was filed in March 2025, and this matter became fully briefed on August 13, 2025.

DISCUSSION

Heinsohn appears to challenge the judgment based on two distinct claims of misconduct by the prosecutor in rebuttal argument to the jury.  He claims the prosecutor: (1) improperly suggested he was facing only a lenient punishment; and (2) misstated the law of entrapment.  The first claim is unpersuasive, because there is not a reasonable likelihood the jury construed the complained-of remarks in an objectionable fashion.  The second claim is forfeited on appeal, because trial counsel neither timely raised it nor sufficiently put the trial court on notice that he was alleging prosecutorial misconduct.[2]

I

*Background Legal Principles*

A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, requiring reversal under the federal Constitution if the prosecutor has infected the trial with such unfairness that a conviction was a denial of due process. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275 (*Gonzales*).)  And under California law, a prosecutor who uses deceptive and reprehensible methods commits misconduct even if the trial was not fundamentally unfair as a result.  (*Ibid*.)  When a claim of misconduct is based on the prosecutor's argument to the jury, the question is whether

---

[2]  The parties did not address forfeiture in their briefing.  But "the parties had the *opportunity* to brief forfeiture, a rule always implicated when an argument is" untimely raised in the trial court or "raised for the first time on appeal.  (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ['The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or *fairly included within the issues raised* does not implicate the protections of [Government Code] section 68081' (italics added)].)" (*People v. Graham* (2024) 102 Cal.App.5th 787, 798, fn. 6.)

there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. (*Ibid*.)

To preserve an appellate claim of prosecutorial misconduct, a defendant must both (1) timely raise it and (2) request a curative instruction to the jury that addresses the *specific* misconduct alleged. (See *People v. Collins* (2010) 49 Cal.4th 175, 198 [a defendant " ' "may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety" ' "]; *Gonzales*, *supra*, 54 Cal.4th at p. 1275 [the defendant must " ' "make a timely objection and request an admonition" ' "].) An assignment of prosecutorial misconduct during closing argument to the jury is timely, even when not contemporaneous to the complained-of remarks, if defense counsel puts the trial court on notice that the specific ground of misconduct is being alleged *before* the jury begins deliberating. (*People v. Peoples* (2016) 62 Cal.4th 718, 799-801 [the defendant preserved claims of prosecutorial misconduct in closing argument to the jury only as to those statements that defendant specifically objected to "by way of a motion for a mistrial" before the jury began deliberating, thereby "put[ting] the court on notice that misconduct was alleged in time for the court to instruct the jury and correct any error"]; *People v. Hubbard* (2020) 52 Cal.App.5th 555, 561-563 [the defendant preserved a claim of prosecutorial misconduct because defense counsel "raised her objections to the prosecutor's argument immediately after the conclusion of the prosecutor's argument," *before* the trial court dismissed the jurors to begin deliberations, thereby "put[ting] the court on notice that misconduct was alleged in time for the court to issue a curative instruction"].)

## II

### *Analysis*

### A.    *Comments on Punishment*

We agree with the People there is not a reasonable likelihood the jury construed the prosecutor's comments in rebuttal concerning punishment in an objectionable fashion, though we reach that conclusion for somewhat different reasons than the People propose. In our view, although the prosecutor's conduct was clearly improper, the trial court's admonishment of the prosecutor in open court and its curative instructions to the jurors after the complained-of remarks sufficiently cured any harm.

After directing the prosecutor not to talk about punishment or consequences in two separate sidebar discussions, the trial court interrupted the prosecutor during rebuttal argument and admonished him in open court: "Counsel, this is getting close to talking about consequences and punishment, and you are directed not to do that." Then, in its final instructions before dismissing the jurors to deliberate, the trial court told them, "You must reach your verdict without any consideration of punishment." And after it denied the mistrial motion, the trial court brought the jurors back into the courtroom and told them, inter alia, "not to consider in any way, shape, or form punishment or consequences. That is not a consideration for you at all, and it was not presented in evidence." These admonishments were "clear, and fully sufficient to cure any harm." (*Gonzales*, *supra*, 54 Cal.4th at p. 1275; see *People v. Mejia* (2024) 104 Cal.App.5th 921, 934-936 [no reasonable likelihood the jury applied the complained-of comments in an objectionable fashion because the trial court "decisively countered prejudice" from the prosecutor's improper statement in rebuttal argument by (a) instructing the jury to disregard the prosecution's statement immediately after it was made and (b) providing a curative instruction to the jury a few hours after it began deliberating].)

10

B.     *Entrapment*

The parties agree that the prosecutor's comments were contrary to the law of entrapment as articulated in *People v. Superior Court (Orecchia)* (1976) 65 Cal.App.3d 842, wherein the court reasoned, "the defense of entrapment, when successful, is a proclamation by the trier of fact that the accused is truly not guilty" (*id*. at pp. 846-847). But the People insist any error was harmless. We decline to consider this claim of prosecutorial misconduct because Heinsohn's trial counsel neither timely nor sufficiently raised it in the trial court.

The claim was not timely raised because, to the extent defense counsel ever objected or assigned misconduct regarding this claim, he did so after the jury had been deliberating for more than an hour. (*People v. Peoples*, *supra*, 62 Cal.4th at pp. 799-801 [the defendant preserved claims of prosecutorial misconduct in closing argument to the jury only as to those statements that defendant specifically challenged before the jury began deliberating].) And the claim was not sufficiently raised because defense counsel never specifically objected to or alleged misconduct in connection with the prosecutor's comments regarding entrapment. In response to the trial court's sua sponte observation that the prosecutor misstated the law of entrapment, defense counsel said: "I did not object at the time. That was a mistake in my part, but I would ask that the Court instruct the jury that someone who is entrapped is not guilty. . . . That's my only additional request." That request for a curative instruction to address the prosecutor's comments on entrapment is a far cry from a clear assertion that the trial court's sua sponte observations either supported the original misconduct claim or illuminated an independent misconduct claim. (See *People v. Collins*, *supra*, 49 Cal.4th at p. 198 [a defendant " ' "may not complain on appeal of prosecutorial misconduct unless in a timely fashion—*and on the same ground*—the defendant made an *assignment of misconduct* and requested that the jury be admonished to disregard the impropriety" ' " (italics added)].)

Accordingly, we deem this claim of prosecutorial misconduct forfeited on appeal, and will not consider it.[3]  (See *People v. McCullough* (2013) 56 Cal 4th 589, 593 [the forfeiture rule exists to encourage parties to bring ostensible errors to the attention of the trial court, so they can be corrected in the first instance; it would be unfair and inefficient to entertain an appellate claim that could have been easily corrected or avoided " 'if timely brought to the attention of the trial court' "].)

DISPOSITION

The judgment is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
DUARTE, Acting P. J.

_____/s/_____
FEINBERG, J.

_____

[3] To the extent Heinsohn is *not* raising a distinct claim of prosecutorial misconduct in connection with the apparent misstatement of the law, but is instead arguing that the entrapment comments bolster the misconduct claim regarding the comments on punishment, we reject any appellate reliance on the entrapment comments as forfeited for the same reasoning we provided above.

12